Mrs. C. Frank Scott, Commissioner of the Department of Employment Security of the State of Tennessee, Appellant,

*v.*

The Travelers Indemnity Company and Foster & Creighton Company, Appellees.

384 S.W.2d 38.

(*Nashville*, December Term, 1963.)

Opinion filed November 12, 1964.

W. L. MOORE, Chief Counsel, State Department of Employment Security, W. D. DODSON, Assistant Chief Coun-

sel, State Department of Employment Security, Nash-ville, for appellant.

THOMAS WARDLAW STEELE, Nashville, GULLETT, STEELE & SANFORD, Nashville, of counsel, for appellees.

MR. JUSTICE HOLMES delivered the opinion of the Court.

The appellant, Commissioner of the Department of Employment Security of the State, sued the appellees, Foster & Creighton Company, as general contractor, and The Travelers Indemnity Company, as surety on its bond, to recover unemployment compensation taxes incurred by W. R. Whaley, a subcontractor of Foster & Creighton Company on a contract with the Chattanooga Housing Authority. The appellees demurred to the bill. The Chancellor sustained the demurrer. The appellant has perfected an appeal. The parties will be referred to hereinafter according to their status in the Chancery Court.

The original bill alleges that on June 8, 1962 the defendant Foster & Creighton Company entered into a

contract with the Chattanooga Housing Authority, to construct a low-rent housing project. Pursuant to the requirements of this contract, this defendant executed the usual performance and payment bond required by law, with the defendant The Travelers Indemnity Company as surety thereon. A copy of this bond is made an exhibit to the bill. The bill further alleges that subsequent to the execution of the contract and the bond above referred to, the defendant Foster & Creighton Company entered into a subcontract with W. R. Whaley, a masonry contractor, for a part of the work contemplated by the general contract. It is further alleged that W. R. Whaley, as such subcontractor, employed certain employees for the sole purpose of performing his subcontract and that said Whaley thereby incurred certain unemployment compensation taxes which are owed to the complainant and which remain unpaid despite all efforts to collect same.

It is then alleged in the bill that, under the provisions of T.C.A. sec. 12-423, the bond of the defendant Foster & Creighton Company with the defendant The Travelers Indemnity Company as surety thereon was required to contain a provision that the contractor and its surety be obligated to pay all taxes, contributions, penalties and interest thereon due the State by reason of and directly connected with the performance of the principal contract between the defendant Foster & Creighton Company and the Chattanooga Housing Authority.

It is further alleged that, while the bond made an exhibit to the original bill does not specifically mention the payment of any taxes, the bond does provide that the defendants shall be liable for all debts incurred by the defendant contractor or any immediate or remote sub-

contractor under him in connection with the construction of the project. The bill further asserts that by the provisions of T.C.A. sec. 12-423 the bond shall be deemed to include the obligation to pay such taxes "irrespective of whether or not the same be expressly written into such bond."

The bill then alleges that by the provisions of T.C.A. sec. 12-424 the complainant is "entitled to bring a direct proceeding on said bond" against the defendants for "the collection of said taxes arising out of the performance of said principal contract of June 8, 1962."

The bill further charges that the amount of unemployment compensation taxes owed by W. R. Whaley, as aforesaid, is $11,795.85 together with interest thereon and that proper demand for payment of said has been made upon all parties.

The defendants demurred to the bill upon three grounds:

1. That the bill and the bond exhibited thereto show on their face that the bond does not in any way obligate the defendants to pay or discharge any of the taxes alleged to be owed by W. R. Whaley for which recovery is sought.

2. T.C.A. 12-423 does not and cannot afford complainant the relief prayed for and does not obligate the defendants or either of them to pay any taxes or contributions alleged to be owed by W. R. Whaley to complainant.

3. That if T.C.A. 12-424 purports to authorize complainant to maintain this action then this statute violates Article 1, Section 8 of The Constitution of

the State of Tennessee and the Fourteenth Amendment to the Constitution of the United States.

In reviewing a case decided by the Trial Court on demurrer, it is to be borne in mind that ''a demurrer admits only facts that are well pleaded and reasonable inferences of fact but not deductions, inferences and conclusions of law.'' *In re Eppinger's Estate*, 207 Tenn. 53, 57, 336 S.W.2d 28, 30. Also, averments as to the meaning and interpretation of a writing attached thereto or exhibited are not admitted by a demurrer. Neither does a demurrer admit matters averred in the bill contrary to law. *Crockett v. McLanahan*, 109 Tenn. 517, 525, 72 S.W. 950, 952, 61 L.R.A. 914; *Oman Construction Company v. Tennessee Central Railway*, 212 Tenn. 556, 370 S.W.2d 563, 569.

T.C.A. secs. 12-423 and 12-424 were originally enacted as Sections 1 and 2 of Chapter 33, Acts of 1947 and are, of course, to be construed in *pari materia*. These Code Sections provide:

T.C.A. sec. 12-423: ''Any person, firm or corporation entering into a formal contract with this state, * * * or political subdivision, or any public board, * * * for the construction or maintenance of public buildings, works or projects, * * * shall be required, before commencing on such work, covered by such contract, to execute the usual bond with good and sufficient sureties, as required by law, with the additional obligation that such contractor shall promptly make payment of all taxes, licenses, assessments, contributions, penalties, and interest thereon when, and if, the same may be lawfully due this state, or any county, municipality or political subdivision thereof by reason and directly

connected with the performance of such contract or any part thereof.''

This section then provides that after its effective date any such bond shall be deemed to include the foregoing obligation irrespective of whether or not the same is expressly written into the bond.

T.C.A. sec. 12-424 provides: ''In default of the prompt payment of all such taxes, licenses, assessments, contributions, damages, penalties and interest thereon, *as may be due by any such contractor,* a direct proceeding on said bond may be brought in any court of competent jurisdiction by the proper officer or agency having lawful authority so to do, to enforce such payment''. (Emphasis supplied)

██ The Unemployment Compensation Act is a ''taxing statute and must be strictly construed against the taxing authority.'' *Levy's Ladies Toggery v. Bryant,* 183 Tenn. 372, 379, 192 S.W.2d 833, 836. By the express provisions of T.C.A. sec. 12-424, it is only for the collection of ''such taxes'' as may be due by ''any such contractor'' that a cause of action on the bond ''to enforce such payment'' is given. Had it been the intention of the Legislature by these code sections to make the contractor executing the bond and his surety liable for taxes incurred by a subcontractor, the cause of action given by the statute on the bond would not be limited to the collection of taxes owed by ''such contractor''.

It is not contended by the complainant that the Tennessee Employment Security Law, T.C.A. sec. 50-1301 et seq., imposes liability on the principal contractor for unemployment compensation taxes incurred by the subcontractor in this case, nor could such contention be sus-

tained under the present law. The taxes sued for are. the taxes incurred by the subcontractor, and not taxes due by the principal on the bond.

We. hold that properly construed T.C.A. secs. 12-423 and 12-424 do not create liability on the part of the principal and surety on the bond for unemployment compensation taxes incurred by a subcontractor. It is only taxes due by "such contractor"—that is the contractor executing the bond—that come within the purview of these code sections. No liability for taxes owed only by a stranger to the bond is created by these code sections.

■ It is next insisted by the complainant that the provisions of the performance and payment bond executed by the defendants in this case independent of any statutory requirements render the defendants liable for this tax. This bond provides that the defendant Foster & Creighton Company, as principal, and the defendant The Travelers Indemnity Company, as surety, are "held and firmly bound unto the Chattanooga Housing Authority * * * and all persons doing work or furnishing skill, tools, machinery, supplies, or materials under or for the purpose of the contract" between the principal and the Chattanooga Housing Authority dated June 8, 1962. The pertinent conditions of the bond are as follows:

"NOW, THEREFORE, THE conditions of this obligation are such that if the principal shall in all respects fully comply with the terms and conditions of said contract, and his obligations thereunder, * * * and shall indemnify and save. harmless the Chattanooga Housing Authority, Chattanooga, Tennessee, against or from all costs, expenses, damages, injury or loss, to which the Chattanooga Housing Authority, Chattanooga, Tennessee, may be subjected by reason of any wrong-

doing, misconduct, want of care or skill, negligence, or default * * * on the part of the Contractor, his agents, or employees, in the execution or performance of said contract, and shall promptly pay all just claims for damages or injury to property and for all work done, or skill, tools, or machinery, supplies, labor and materials furnished and debts incurred by the Contractor or any immediate or remote subcontractor under him in or about the performance of the work contracted for, this obligation is to be void.''

The bond further provides:

''This bond shall be for the use of the Chattanooga Housing Authority, Chattanooga, Tennessee, and all persons doing work or furnishing skills, tools, machinery, or materials under or for the purposes of the contract hereinabove referred to.''

On behalf of the complainant, it is urged that the undertaking in the bond to pay ''*debts* incurred by the Contractor or any immediate or remote subcontractor under him in or about the performance of the work contracted for'' includes an undertaking to pay taxes incurred by a subcontractor, that ''debts'' includes taxes.

It must be borne in mind that this is a contractor's bond to pay for labor and materials which, by T.C.A. sec. 12-417, is required as a prerequisite to any public construction contract in this State. The purpose of the bond is to afford protection to furnishers of material and laborers, since they have no lien on public construction. In *Nicks v. W. C. Baird & Co.*, 165 Tenn. 89, 92, 93, 52 S.W.2d 147, the Court stated:

''The mechanic's lien statutes, the statutes creating liens on railroads in favor of the furnishers of labor

182

and materials in their construction, and the statutes requiring the execution of bonds by persons engaged in public works, have been found to contain similar provisions with respect to the protection afforded furnishers of materials, and it has been clearly intimated by this court that a uniform construction and application of the several statutes in this regard is both possible and desirable.''

The bond sued on in this case, by its very terms which we have quoted above, runs in favor of the Chattanooga Housing Authority and all persons doing work or furnishing skill, tools, machinery, supplies or materials for the project. Under no stretch of the imagination can it be said the complainant comes within the definition of those made beneficiaries of this bond.

■ It is true that the word ''debts'' may at times include taxes, as in the Federal statute providing that when a person indebted to the United States is insolvent, the ''debts'' due to the United States shall be first satisfied. Many Courts have held there that ''debts'' includes ''taxes''. See *In re Mitchell's Restaurant,* 31 Del.Ch. 121, 67 A.2d 64, 67. However, the word ''debt'' should not be construed to include taxes, unless there is some reason shown to construe the word as including taxes other than the fact that sometimes the word ''debt'' will include taxes. *Rochelle v. City of Dallas,* 5 Cir., 264 F.2d 166, 168.

Many Courts have held that taxes are not ''debts'' in the ordinary sense of the word. *Dole v. City of Philadelphia,* 337 Pa. 375, 11 A.2d 163, 168, 767; *Hecox v. Teller County,* 10 Cir., 198 F. 634; *Forest City Mfg. Co. v. Levy,* Mo.App., 33 S.W.2d 984, 985; *Allis-Chalmers Mfg. Co. v. United States,* 7 Cir., 165 F.2d 495, 498.

■ "Debts" are obligations for the payment of money founded upon a contract, express or implied; whereas, taxes are imposts levied for the support of government or for some special purpose authorized by government and consent of the taxpayer is unnecessary to their enforcement. Taxes are in no sense contractual. *Womack v. McCook Bros. Funeral Home,* 194 La. 296, 193 So. 652, 653; *People v. Hockwender,* 20 Cal.2d 181, 124 P.2d 823, 824; *Hickok Oil Corp. v. Evatt,* 141 Ohio St. 644, 49 N.E. 2d 937, 940; *St. Joseph Land Co. v. MacLean,* 10 Cir., 32 F.2d 984, 987.

■ When the purpose of the bond is considered, together with those for whose use it expressly provides it was executed, in our judgment it cannot be said that by the use of the word "debts" the parties contemplated taxes. If "debts" were held to include "taxes" many forms of taxes would be included, as Federal Withholding taxes on the wages paid by a subcontractor to his employees, Social Security Taxes on such wages, and privilege taxes, to mention a few. By the use of "debts" in the bond, it cannot be said such an undertaking was intended.

For the reasons stated, the decree of the Chancery Court is in all things affirmed.

WHITE, JUSTICE, not participating.